# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

Carl A. Mascioli,
Albert J. Mascioli,
MBD Company, LLC, and
Mascioli Brothers Development,
Defendants Below, Petitioners

**FILED**

**March 5, 2020**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

vs)  No. 18-0791 (Monongalia County 15-C-722)

Louann Mascioli, Personal Representative
of the Estate of Paul Mascioli,
Plaintiff Below, Respondent

## MEMORANDUM DECISION

Respondent Louann Mascioli, Personal Representative of the Estate of Paul Mascioli, her late husband, filed this action in 2015 against Petitioners Carl A. Mascioli, Albert J. Mascioli, MBD Company, LLC (hereinafter "MBD"), and Mascioli Brothers Development (hereinafter "Mascioli Brothers") (referred to collectively as "Petitioners"), seeking her equitable interest in MBD and Mascioli Brothers. Petitioners appeal the August 10, 2018, order of the Circuit Court of Monongalia County, West Virginia, granting Respondent's motion for summary judgment and awarding her $1,010,000 as the fair market value of her one-third ownership interest in MBD and Mascioli Brothers, as well as $245,168 in attorney's fees and costs.

This Court has considered the parties' briefs, their oral arguments, and the record on appeal.[1] Upon review, the Court discerns no substantial question of law and no prejudicial error. Consequently, a memorandum decision affirming the order of the circuit court is the appropriate disposition pursuant to Rule 21 of the West Virginia Rules of Appellate Procedure.

## I. Background

Brothers Carl, Albert, and Paul Mascioli, with the assistance of attorney Daniel Oliver, formed Mascioli Brothers, a West Virginia partnership. From 1989 through 1998, Mascioli Brothers acquired five properties in Monongalia County, West Virginia. A "Certificate Showing Ownership of Business Under Assumed Name" for Mascioli Brothers was executed by all three brothers and filed in the Monongalia County Clerk's Office. Carl Mascioli was identified as the "Sec Treas," Albert Mascioli was identified as the "President," and Paul Mascioli was identified

---

[1] Petitioners are represented by attorneys Charles C. Wise III, and Ashley Hardesty Odell with Bowles Rice LLP. Respondent is represented by attorneys William E. Galeota, Ancil G. Ramey, Rodney L. Bean, and Crystal Bombard-Cutright with Steptoe & Johnson PLLC.

1

as the "Vice President" of Mascioli Brothers. Although a partnership was created, no partnership agreement was ever executed for Mascioli Brothers.

From 1994 through 2008, at least five deeds, rights of ways, leases, and easements were executed by Mascioli Brothers. Of the five properties owned by Mascioli Brothers, three were residential properties that were leased by the partnership and two were undeveloped land.

The brothers also formed MBD with the assistance of Mr. Oliver. MBD was officially recognized as a limited liability company with the West Virginia Secretary of State's office in 1998. In the Articles of Organization, MBD identified three individuals as its organizers and members: Carl Mascioli; Albert Mascioli; and Paul Mascioli. There was no operating agreement for MBD. During its existence, MBD purchased two residential properties. MBD was administratively dissolved by the West Virginia Secretary of State in 2002. However, MBD did not cease operations or wind up the business. To the contrary, MBD continued to conduct business and in 2003, it purchased a third residential property.

In 2006, MBD engaged Petroplus & Associates, Inc., to prepare a marketing strategy for properties owned by MBD and Mascioli Brothers. Petroplus & Associates, Inc., also created a website, http://mbdcompany.com, which listed the names and contact information for Carl, Albert, and Paul, along with a list of properties—owned by MBD and Mascioli Brothers—that were for sale or lease.

Paul Mascioli died intestate on December 20, 2012. Upon his death, all of his membership interest in MBD and partnership interest in Mascioli Brothers went to his surviving spouse, Louann Mascioli.

By letter dated December 19, 2014, Mrs. Mascioli requested financial statements, including dates and amounts of all partner/member/shareholder distributions and the past three years' income tax returns for Mascioli Brothers and MBD. This request was met with silence. Mrs. Mascioli reiterated her request by letter dated March 23, 2015, and stated that the surviving partners of these businesses had a fiduciary duty to provide her with the information. Mrs. Mascioli formally demanded that Mascioli Brothers and MBD buy out her partnership interest in the businesses. Again, Petitioners did not respond to her request.

In November 2015, Respondent filed a complaint against Petitioners seeking her equitable interest in MBD and Mascioli Brothers; an amended complaint was filed in June 2016. Throughout this protracted litigation, the circuit court strongly encouraged the parties to settle this dispute amicably, to no avail.[2] Petitioners contended that MBD and Mascioli Brothers do not now, and have never existed. Rather, Petitioners claimed that MBD and Mascioli Brothers were only created so that Carl Mascioli could provide for his brothers upon his death even though this assertion was

---

[2] At a hearing held in June 2017, the circuit court stated: "I am ordering mediation again. I'm going to give you two months to do whatever discovery you want to do before mediation if you want to do it. This lawsuit is spending the family's money. It needs to be resolved as families should resolve issues." At a March 2018 hearing, it stated: "[Y]ou all need to settle this case. I'm going to order another mediation[.]"

contradicted by decades of undisputed documentary evidence as well as the deposition testimony of the attorney who assisted the brothers in creating these businesses.

Respondent submitted appraisal reports of the eight properties at issue showing they were worth $3,030,400 on the date of her husband's death. Respondent also submitted a valuation report from her expert who opined that the fair market value of a one-third ownership interest on a controlling, non-marketable basis for Mascioli Brothers and MBD was $1,010,000. The appraisals and valuation report were uncontested.

Respondent filed a motion for summary judgment. Following a hearing, the circuit court granted her motion. The circuit court's order contains seventy-seven findings of fact detailing the formation of MBD and Mascioli Brothers, the dates those entities purchased the properties at issue, how certain profits were shared, and how members were involved in the businesses. The circuit court concluded that the Revised Uniform Partnership Act (hereinafter "RUPA"), West Virginia Code §§ 47B-1-1 to 47B-8-7, governed the dispute. It concluded that Carl, Albert, and Paul Mascioli formed and conducted Mascioli Brothers as a partnership as "the record in this matter is replete with uncontroverted evidence" that the brothers associated to conduct this business for profit. Similarly, it found that Carl, Albert, and Paul Mascioli formed MBD as a limited liability company from 1998 through 2002, and MBD continued to conduct business as a partnership following its administrative dissolution. The circuit court concluded that Petitioners were required to purchase Respondent's one-third partnership interest for $1,010,000.

Respondent filed a motion to recover reasonable attorney's fees and costs and the circuit court set the matter for hearing. Respondent addressed each of the *Pitrolo*[3] facts at length in its motion and submitted an itemized statement. Petitioners did not object to the hourly rate or number of hours expended by Respondent's counsel. The circuit court awarded Respondent attorney's fees and costs of $245,168 pursuant to RUPA because Petitioners refused to tender payment or offer to pay the Estate of Paul Mascioli.[4]

## II. Standard of Review

Petitioners appeal the circuit court's order granting Respondent's motion for summary judgment. "A circuit court's entry of summary judgment is reviewed *de novo.*" Syl. Pt. 1, *Painter v. Peavy,* 192 W. Va. 189, 451 S.E.2d 755 (1994). Pursuant to Rule 56(c) of the West Virginia Rules of Civil Procedure, summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Furthermore, "[s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party[.]" Syl. Pt. 4, in part, *Painter,* 192 W. Va. at 190, 451 S.E.2d at 756.

---

[3] *See Aetna Cas. & Sur. Co. v. Pitrolo*, 176 W. Va. 190, 342 S.E.2d 156 (1986).

[4] *See* W.Va. Code § 47B-7-1(i) ("The court may assess reasonable attorney's fees and the fees and expenses of appraisers or other experts for a party to the action, in amounts the court finds equitable, against a party that the court finds acted arbitrarily, vexatiously, or not in good faith. The finding may be based on the partnership's failure to tender payment or an offer to pay[.]").

## III. Discussion

RUPA "governs all partnerships" in existence before, on, or after July 1, 1995. W.Va. Code § 47B-11-4. "RUPA is a 'gap filler' in that it only governs partnership affairs when there is no partnership agreement, or to the extent a partnership agreement does not otherwise provide." *Valentine v. Sugar Rock, Inc.*, 234 W. Va. 526, 540, 766 S.E.2d 785, 799 (2014). West Virginia Code § 47B-1-3(a) provides that "relations among the partners and between the partners and the partnership are governed by the partnership agreement. To the extent the partnership agreement does not otherwise provide, this chapter governs relations among the partners and between the partners and the partnership." Relevant to the issue before us, RUPA expressly provides that "[p]roperty acquired by a partnership is property of the partnership and not of the partners individually." *Id*. § 47B-2-3.

Under RUPA, a partner is disassociated from a partnership if he or she dies. *Id*. § 47B-6-7(i). And upon disassociation, "the partnership shall cause the dissociated partner's interest in the partnership to be purchased for a buyout price" determined pursuant to RUPA.[5] *Id*. § 47B-7-1(a).

Petitioners do not take issue with any of the circuit court's findings of fact. Rather, they argue that the circuit court erred in granting summary judgment in favor of Respondent and contend "law and equity supplement" the RUPA and the conduct of the parties should have been considered before determining that a partnership existed. Specifically, Petitioners contend that Carl Mascioli purchased and maintained the eight real estate properties at issue with the plan to leave them to his brothers when he died. This argument is unpersuasive. In *Valentine*, this Court held that: "Under the Revised Uniform Partnership Act, a partnership is an association of two or more persons to carry on as co-owners a business for profit, whether or not the persons intend to form a partnership. *W.Va. Code* §§ 47B-1-1(7) [2003] & 47B-2-2(a) [1995]." 234 W.Va. at 528, 766 S.E.2d at 787, Syl. Pt. 6. Here, the circuit court expressly considered the conduct of the parties when determining that a partnership existed including the fact they procured the assistance of counsel to enter into Mascioli Brothers and MBD. The circuit court stated: "The record is replete with evidence of these three brothers acting like a partnership." The fact that Carl Mascioli may have made more business decisions than his brothers is irrelevant to the determination of whether the brothers were carrying on as owners of a business for profit. Moreover, the deeds to the eight properties at issue reflect that they are owned by either Mascioli Brothers or MBD, not Carl Mascioli.[6]

Petitioners next contend that the circuit court erred to the extent that it entered judgment against the individual Petitioners, jointly and severally. This assignment of error lacks merit. RUPA provides, in part, that "the partnership shall pay, or cause to be paid, in cash to the disassociated partner the amount the partnership estimates to be the buyout price and accrued

---

[5] *See Id*. § 47B-7-1(b) (defining buyout price of dissociated partner).

[6] Petitioners also assert there was no change in material evidence before the circuit court after it had denied summary judgment earlier in the litigation. However, the record reflects that the circuit court was inclined to grant summary judgment but urged the parties to resolve this family matter amicably at mediation. *See* note 2, *supra*.

interest." W.Va. Code § 47B-7-1(e). While this section speaks to an obligation of the partnership, West Virginia Code § 47B-3-6 provides that "all partners are liable jointly and severally for all obligations of the partnership[.]"

Petitioners further assert that the circuit court erred in finding Respondent's partnership interest was $1,010,000 because it failed to consider all evidence regarding the value of the business and that Carl Mascioli was entitled to a settlement of his partnership account because of his contributions. This contention is not supported by the record. The circuit court discussed the uncontested value of the partnership and the lack of evidence demonstrating that Carl Mascioli was entitled to his alleged contributions. It found that Petitioners "have no accountings or other competent evidence to support their contention otherwise."

Finally, Petitioners argue that the circuit court erred in granting Respondent $245,168 in attorney's fees and costs because they acted in good faith and the amount awarded "is not equitable in proportion to the value at stake in this case." This argument lacks merit. It is undisputed that the partnership refused to tender payment or offer to pay the Estate of Paul Mascioli when Respondent requested an accounting and distribution of partnership assets. Thus, the circuit court had the discretion to award her attorney's fees and costs pursuant to RUPA. *See* W.Va. Code § 47B-7-1(i) (stating court may assess reasonable attorney's fees "based on the partnership's failure to tender payment or an offer to pay."). In its order, the circuit court detailed Petitioners' bad faith conduct during the course of this litigation. It found Petitioners refused to mediate this matter in good faith, refused to produce any accounting whatsoever until ordered to do so, admitted to altering and destroying documents, refused to permit inspections of the properties in a timely matter, and submitted inaccurate and inconsistent factual representations to the circuit court that were wholly inconsistent with the evidence. We therefore find no abuse in discretion in the award of attorney's fees and costs.[7]

For the reasons set forth above, we affirm the order of the Circuit Court of Monongalia County that granted Respondent's motion for summary judgment.

Affirmed.

**ISSUED:** March 5, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

---

[7] Petitioners also contend the circuit court erred in refusing to accommodate their request for a jury trial. This argument is moot considering the matter was resolved by summary judgment.

5